Firm Lumber Co. *v.* City of Hattiesburg. McComb *v.* Same. Platt *v.* Same. McInnis *v.* Same. Burkett et al *v.* Same. Satcher et al. *v.* Same. Jackson et al. *v.* Same.

(En Banc. Oct.. 29, 1923. Suggestion of Error Overruled Dec. 31, 1923.)

[98 South. 145. Nos. 23031, 23277, 23279-23283.]

1. MUNICIPAL CORPORATIONS. *Statute intended to insure uniformity and equality of taxation in making improvements.*

The purpose of section 4 of chapter 260, Laws of 1912 (Hemingway's Code, section 5944), was so far as practicable to insure uniformity and equality of taxation by municipalities in the making of the special improvements of streets, alleys, and avenues provided for in said chapter.

2. MUNICIPAL CORPORATIONS. *Assessments for street improvements required to be made according to method adopted before enactment of statute.*

Where, prior to the enactment of chapter 260, Laws of 1912 (Hemingway's Code sections 5941-5965), a municipality had paved its streets so far as paved out of the proceeds of bonds issued for that purpose, *held*, under section 4 of said act, such municipality was without power after the adoption of said act to pave other streets by assessing the cost thereof to the abutting property owners, but was required by said section 4 to adhere to the method of payment previously adopted.

HOLDEN and ETHRIDGE, JJ., dissenting.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

APPEAL from chancery court of Forrest county.

HON. BEE KING, Chancellor.

Suits by the Firm Lumber Company, by H. H. McComb, by Mrs. L. S. Platt, by Mrs. B. O. McInnis, by O. R. Burkett and another, by H. M. Satcher and another, and by W. H. Jackson and others against the city of Hattiesburg. From a judgment for defendant, plaintiffs appeal. Reversed, and judgment rendered.

See, also, 95 So. 250.

*Stevens & Heidelberg,* for appellant.

We shall enter into no extended discussion of the law of this case and shall argue very briefly only, for the reason that, as we see it, this case is controlled absolutely by the decision of this court rendered on the 17th of April, 1922, the case of *City of Jackson* v. *Doxey, et al.,* reported in 91 So., at page 348. The principle of law announced in the Doxey case is exactly the same as the principle involved in this appeal. There is but slight difference in the facts of the Doxey case and the facts of the case at bar. In the Doxey case the city of Jackson, prior to the adoption of chapter 260 of the Laws of 1912, had adopted an exclusive method for the payment of the cost of all paving which had theretofore been done by the city of Jackson. In the case at bar, the city of Hattiesburg, prior to the adoption of chapter 260 of the Laws of 1912, had adopted an exclusive method for the payment of the cost of all paving which had been done in the city of Hattiesburg. In the Doxey case, prior to the adoption of chapter 260 of the Laws of 1912, the city of Jackson had never attempted to assess the entire cost of paving any street as against the abutting property. In the case at bar, the city of Hattiesburg, prior to the adoption of chapter 260 of the Laws of 1912, had never attempted to assess the entire cost or any cost of any paving as against the abutting property. In the Doxey case, prior to the adoption of chapter 260 of the Laws of 1912, a large part of the streets of the city of Jackson had been paved by the city, and in the case at bar prior to the adoption of said act a large part of the streets of the city of Hattiesburg had been paved by the city of Hattiesburg. There are but two slight differences in the facts of the case of Doxey and in the facts of the case at bar, and these differences make a stronger case for relief in favor of the abutting property owner in the

case at bar than in the Doxey case. The first difference is that in the Doxey case prior to the adoption of chapter 260 of the Laws of 1912 the city of Jackson had only been paying from the general fund or at general expense one-third of the cost of doing any paving on any street, one-third thereof being assessed as against each abutting property owner. In the case at bar, the city of Hattiesburg, prior to the adoption of said chapter 260 of the Laws of 1912, had paid for all paving at general expense, and no part thereof had been assessed against any abutting property owner. The other difference is that in the case at bar a part of the very street in controversy had been paved at general expense, while this was not true in the Doxey case. No part, so far as the record of the Doxey case shows, of Minerva street in the city of Jackson had ever been paved by the city, and one-third of the cost thereof paid by the city, but in the case at bar the agreed statement of facts shows that a part of Newman street, the very street in controversy here, was paved by the city prior to the adoption of chapter 260 of the Laws of 1912, and the cost of this paving was paid at general expense and bonds were issued by the city, and these bonds are now outstanding and today constitute a lien upon the property of this appellant. The case at bar presents a far more glaring example of the inequality which section 4 of chapter 260 of the Laws of 1912, appearing as section 5944 of Hemingway's Code, was designed to prevent than does the Doxey case. This section of said chapter clearly outlines the reasons that the legislature had in mind when it provided in this section that whatever method had been adopted by municipalities prior to the adoption of chapter 260, must be continued in effect. The legislature had in mind in providing that whatever system had been adopted by the municipality must be continued in effect, but the legislature was not satisfied with this apparent reason

and so it clearly defined the reason it had in view in requiring that this be done, for in the concluding part of section 4 of this chapter it is provided that this system must be kept in effect "to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis."

We have here a property owner whose property is being annually assessed with a tax to pay for the paving of streets all over the city of Hattiesburg; to pay for the paving of streets that were paved entirely at general expense. Not one dollar was contributed by any property owner on any of the streets paved prior to the adoption of chapter 260 of the Laws of 1912, and yet the municipality comes along in 1920 and, not satisfied with assessing the property of this appellant on Newman street with its proportionate share of the cost of paving Main street, Bay street, Walnut street, and all of the other streets in the city of Hattiesburg which were paved prior to 1912, it now has paved the street in front of the property of this appellant and doesn't contribute one cent toward the cost thereof, but attempts to assess the entire cost for the paving against this property owner.

The facts in the case at bar, we shall repeat, bring it more squarely within the prohibition of section 4, of Chapter 260 of the Laws of 1912 than did the facts in the Doxey case. By the first sentence of said section 4, it is provided: "The mayor and board of aldermen shall be the sole judges as to the necessity for the special improvement, and they shall be the sole judges as to whether or not the general improvement fund shall be used for the special improvement, or whether or not the cost shall be assessed against the abutting property owners, as hereinafter directed."

We therefore most earnestly submit that this case is controlled by the decision of this court in the case of the

*City of Jackson* v. *Doxey, supra,* and that, therefore, any extended argument of this case will be unnecessary.

We desire to call the court's attention to that part of the decision of the supreme court of South Dakota in the case of *Pettigrew* v. *City of Sioux Falls,* 150 N. W. 722, reading as follows: ''The authority to assess abutting property for street improvements is purely statutory, and the statutes should be strictly construed to the end that the rights of the property owners be fully protected.''

And we also desire to call the court's attention to the case of *Flanigan* v. *The City of Tulsa,* 155 Pac. 452, in which the supreme court of the state of Oklahoma said: ''A city can create a valid municipal assessment for improving of streets only when the improvement is made pursuant to law, and the mode established by statute is strictly followed.''

*D. E.* and *C. W. Sullivan,* for appellee.

It is contended by appellant that because the city of Hattiesburg sold its general bonds in the years 1906 and 1907, and used one hundred eighty-five thousand dollars of the proceeds to pave certain streets, which of course were paid by general taxation, that the city could not, even as late as the year 1920, depart from that plan and adopt the plan of special improvements and special assessments against the abutting owners of the street to be paved, as it did do in the case at bar. In other words it is argued that the right given under the law to the city to pave streets by a general bond issue, and therefore by general taxation, is exclusive of the right given the city under the law to make special improvements at the expense of the abutting property owners, and to pay for the improvements by a special assessment against the abutting property owners.

For the last thirty years two distinct plans of paving streets have been in full force and effect under the statutes, and neither excludes the other, but they both may be resorted to at the same time by the same municipality. One of the plans provides for paving streets out of the proceeds of general bond issues for street paving, or out of the proceeds of the general improvement fund. If either one of these funds is used to pave streets the money so expended is either raised at once by general taxation, or ultimately so raised. The other plan provides for paving streets by special assessments against the property of the abutting owners on the streets paved, which is not general taxation, but is special taxation. These two plans for street paving have stood side by side in the statutes ever since general statutes on the subject of street paving were adopted in the state of Mississippi.

The proposition relied on by counsel for appellant that the first paving done by the city of Hattiesburg under the general taxation plan precludes it from ever paving under the special assessment plan has been decided against appellant's contention by the supreme court of this state in the case of *Edwards, etc., Company* v. *City of Jackson,* 91 Miss. (Opinion) page 471. We quote from that opinion in part as follows: "It is argued by counsel for appellant that the rights given under section 3011, and those under sections 3014, 3015 and 3016, are exclusive, one of the other, and if the city pursued the remedy under one section to accomplish the end, by so doing it precluded itself from using the other. To the establishment of this proposition it is to be noted that counsel cite no authority save this statement in the brief." The matter is further discussed by the court, and we call the court's attention to the further discussion of that question.

Counsel for appellant involve themselves in hopeless confusion when they undertake to make chapter 260,

Laws of 1912, and especially section 4, apply to all street paving which may be done by municipalities. They get into the same confusion in the discussion of the case of the *City of Jackson* v. *Doxey*. As heretofore pointed out, section 3415, Code of 1906 (section 5968, Hemingway's Code) authorizes municipalities to issue bonds to raise money to pave streets, and these bonds are refunded by a general tax levy on all the property in the municipality. This was done by Hattiesburg in 1906 and 1907. This method of paving streets may be resorted to and no special assessments need be made. Or it may be resorted to in part, and chapter 260, Laws of 1912, may be resorted to in part, so that a general assessment may be made in part and a special assessment made in part, and the two assessments combined will pay for the whole cost of the pavement. Or the method of special assessment provided for in chapter 260, Laws of 1912, may be used exclusively, in which a special assessment alone will be levied and the abutting property will be liable for the entire cost.

If the two distinct plans are combined and a general levy made in part, and a special levy made for the remainder, then the municipality must continue this plan "to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis." Or if the plan of special assessments under chapter 260, Laws of 1912, or prior laws for special assessment, has been resorted to, then this method must be continued "to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis." This is what the Doxey case means, and nothing else.

The words in the latter part of section 4 that "all persons may be compelled to pay for the same character of special improvements on an equal basis" conclusively show that this section is dealing with special improvements paid for by special assessments. No person pays

for an improvement that is not made by a special assessment against his abutting property. If the improvement is made out of the proceeds of bond sales, or the general improvement fund, no person pays for such improvement. The city pays for the improvement by general taxation and the property owners simply pay taxes to the city.

But it does seem useless to argue about what section 4, chapter 260, Laws of 1912 means, when the opinion in the case of *City of Jackson* v. *Doxey*, 91 So. 348, settles that definitely and finally. The city of Jackson had been paving streets by assessing two-thirds of the cost to the abutting owners and one-third to the ·city. The city undertook to depart from this plan and assess all the cost to the abutting owners.

Argued orally by *H. P. Heidelberg, G. W. Currie* and *S. E. Travis* for appellant, and by *D. E. Sullivan* and *Marcellus Green,* for the appellee.

ANDERSON, J., delivered the opinion of the court.

These cases were appealed from the circuit and chancery courts of Forrest county, one coming from the circuit court, and the others from the chancery court. They are all considered and disposed of by the decision of one question common to· each, rendering it useless to decide any other question involved. It is deemed unnecessary to go into a history of the court proceedings which present the question.

The question upon which they all turn is this: Whether under section 4, chapter 260, Laws of 1912 (Hemingway's Code, section 5944) where a municipality prior to that act had paved its streets so far as paved out of the proceeds of a general bond issue, could after that act change its policy, and pave other streets, and pay for the same by assessing the cost thereof to the abutting

property owners. The essential facts are undisputed.
Prior to the adoption of chapter 260, Laws of 1912, the
city of Hattiesburg had paved a considerable portion of
its streets, paying for the same exclusively out of the
proceeds of general bonds issued for that purpose. Up
to that time that was the exclusive method adopted by
the city for paying for the pavement of its streets. In
1920 the city, proceeding under said chapter 260, Laws
of 1912, undertook to provide for the pavement of cer-
tain streets in said city, and assess the entire costs there-
of to the abutting property owners, one-half to the owners
on each side of the street. All of the appellants were
owners of lots abutting streets, the pavement of which
was provided for. They contested the right of the city
to make said special improvement in the manner at-
tempted. They appeal here from adverse decisions by the
courts in which the causes were pending.

A decision of the question involved requires a construc-
tion of chapter 260, Laws of 1912 (Hemingway's Code,
section 5941 to 5965, inclusive), especially of section 4 of
said act (Hemingway's Code, section 5944). The first
section of the act authorizes municipalities to make spec-
ial improvements of their streets, alleys, and avenues, or
any part thereof, and charge the cost of such improve-
ment to the abutting property owners. The second sec-
tion of the act defines among other things what the legis-
lature meant by "special improvement," namely, "it
shall only include the construction of the improvement on
streets and not repair on same, but when applied to side-
walk improvement it shall include both the construction
of the improvements and repair of same on sidewalks."
It is provided in section 3 that when the mayor and board
of aldermen deem any special improvement necessary
"on any street or any part of any street in the munici-
pality they *may use their discretion as to whether or not
the general improvement fund shall be used to make the*

*necessary improvement*" (italics ours), or the costs shall be assessed to the abutting property owners.

Section 4 (section 5944, Hemingway's Code) is in this language:

"The mayor and board of aldermen shall be the sole judges as to the necessity for the special improvement, and they shall be the sole judges as to whether or not the general improvement fund shall be used for the special improvement, or whether or not the cost shall be assessed against the property owners, as hereinafter directed. But the method adopted by the mayor and board of aldermen for the payment of special improvements must be the same on all streets of the municipality; and in case any municipality has already commenced any particular kind of special improvement the municipality must continue to assess the cost on all owners of property in the municipality in the same way that the assessment was made before the passage of this act, to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis, provided the provisions of this act shall not apply to property owned by the state."

Then follow the requirements and procedure to carry out the plan of taxing the cost of the special improvement to the abutting property owners, in the event that method is adopted. There appear to be three outstanding thoughts in the statute, namely: First, municipalities are given the authority to pave their streets and alleys by assessing the cost to the abutting property owners, as well as by paying for the same out of the general improvement fund; second, they are given the exclusive authority to decide which method they will adopt; and, third, it provides that where one of those methods shall be adopted in the future it shall not be departed from, and where one had been adopted before the passage of that act there shall be no departure from that method in

133 Miss.—52

the future.   In other words, the legislature clearly had
in mind uniformity and equality of taxation in making
this character of special improvement.   Section 4 of said
act, although the language used in some respects is not'
technically accurate, simply provides that when said
act was adopted, if one of those methods had been in ex-
clusive use by a municipality, there could be no depar-
ture therefrom; it had to be adhered to in the future.
The language *"to the end that all persons may be com-
pelled to pay for the same character of special improve-
ments on equal basis"* (italics ours), is the key to the
meaning of said limitation in section 4. How could there
be anything like approaching uniformity and equality
in taxation if the contention of the city be sound.   For
illustration:   A municipality, before the adoption of
chapter 260, Laws of 1912, had issued a large amount of
special improvement bonds, and paved the greater part
of its streets and alleys.   Later, after the passage of
said act, that method is abandoned, and the few streets
and alleys that are left are paved by assessing the cost
thereof to the abutting property owners.   The result is
the abutting property owners must be taxed to pay their
proportion of the special improvement bonds, as well
as to pay the entire costs of the new improvements; while
the abutting property owners on the streets and alleys
paved out of the special improvement bonds would be
chargeable with no part of the new improvement.   As
we view it this identical question was involved and de-
cided in *City of Jackson* v. *Doxey,* 128 Miss. 618, 91 So.
348.   The city of Jackson, prior to the adoption of chap-
ter 260, Laws of 1912, had paid for the pavement of its
streets and alleys by assessing two-thirds to the abutting
property owners and one-third to the city.   After the
adoption of said act the city undertook to change the
method by charging the entire cost to the abutting prop-
erty owners.   This court held that under section 4 of said

act the city of Jackson was required to adhere to the method adopted prior to the passage of said act, and therefore was without authority to change the method to one of assessing the abutting property owners with all of the costs.

It is conceded on behalf of the city of Hattiesburg that the Doxey case is sound, and should not be overruled, but it is contended that it is distinguishable from these cases, in that in the Doxey case there was an attempt to change from one method of assessing abutting property owners to another method of assessing the abutting property owners; that the present cases do not involve that character of change. That the change here is from paving the streets and alleys out of the general improvement fund, to paving them at the cost of the abutting property owners. That the limitation imposed by section 4 of said act is only a limitation against a change of the method of assessing the costs to the abutting property owners, and has no reference to a change from paying the cost out of the general improvement fund to assessing it to the abutting property owners. We are unable to see the force of that contention. Such a construction would make section 4 meaningless. Instead of that section bringing about, in a measure at least, uniformity and equality in taxation, it would have the contrary effect.

*Reversed and judgment for appellants.*

Smith, C. J., and Sykes, J., concur.

Cook, J., takes no part in decision.

Holden, J. (dissenting).

The construction placed upon section 4, chapter 260, Laws of 1912, by the majority of this court, is erroneous, in that the act is given a broader interpretation than intended by the legislature.

The city of Hattiesburg in 1907 paved certain of its principal streets, and paid therefor out of the general

improvement fund raised by a general bond issue. This paving was an improvement for the general benefit of the public of the city. A decade later, and after the passage of chapter 260, Laws of 1912, it adopted the method of special improvements of paving the streets, and assessing the cost to the abutting property owners, such improvements now amounting to three hundred thousand dollars or four hundred thousand dollars, which the city had assessed against the abutting property, and now seeks to collect. The majority opinion holds these assessments against the abutting property holders are void as being in violation of the said chapter 260, Laws of 1912.

The majority decision is that, since the city in 1907 proceeded to pave some of its main streets out of the general fund raised by bond issue to be met by general taxation, it cannot ten years thereafter change this method of special improvements by assessing the cost for paving to the abutting property owners on outlying or other streets. I do not think the legislative act justifies such a conclusion.

This act was construed in *City of Jackson* v. *Doxey*, 128 Miss. 618, 91 So. 348, and it was correctly held there that under the act the city of Jackson could not change its method of paving from one where the city paid one-third of the cost, and the property owners on either side of the street paid the other two-thirds, to a plan where the property owners on each side of the street should pay the whole cost of the paving. This decision is a sound interpretation of the law. But it is clear to me there is a marked difference between the Doxey case and the one now before us.

A study of the statutory history of the subject will reveal the fact that for the last thirty years two distinct plans for paving streets have been in full force under the statutes of our state, and neither excludes the other, but they both may be resorted to at the same time by the municipality. One of the plans provides for paving the

streets out of the proceeds of a general bond issue or out of the general improvement fund. The other plan provides for paving streets by a special assessment against the abutting property owners on the street paved, which is not general taxation, but is by special taxation for the special improvement and benefit to the abutting property. These two plans have remained side by side in the statutes for many years.

Now the main opinion herein holds that where a municipality once undertakes to pay for paving for the general public benefit out of the general improvement fund raised by taxation or by bond issue, it is forever barred from adopting the other plan of paving and assessing the cost thereof against the abutting property, which the improvement specially benefits. I do not think such idea ever entered the minds of the legislature in passing the said act of 1912.

Now let us see what is the language of this act. It is provided in section 3 that when the mayor and board of aldermen deem any special improvement necessary "on any street or any part of any street in a municipality, they may use their discretion as to whether or not the general improvement fund shall be used to make the necessary improvement," or the cost shall be assessed to the abutting property owners. Section 4 is in this language:

"The mayor and board of aldermen shall be the sole judges as to the necessity for the special improvement, and they shall be the sole judges as to whether or not the general improvement fund shall be used for the special improvement, or whether or not the cost shall be assessed against the property owners as hereinafter directed. But the method adopted by the mayor and board of aldermen for the payment of special improvements must be the same on all streets of the municipality; and in case any municipality has already commenced any particular kind of special improvement the municipality must continue

to assess the cost on all owners of property in the municipality in the same way that the assessment was made before the passage of this act, to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis, provided the provisions of this act shall not apply to property owned by the state.''

It seems plain to me the language ''and in case any municipality has already commenced any particular kind of special improvement the municipality must continue to assess the cost on all owners of property in the municipality in the same way that the assessment was made before the passage of this act, to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis,'' has reference solely to that method of special improvement where the cost is assessed to the abutting property owner. The language used is: ''The municipality must continue to assess the cost on all owners of property in a municipality in the same way that the assessment was made before the passage of this act,'' to the end, as it goes on to say, that all persons whose property is specially benefited by the improvement, the cost of which is to be assessed against the property, be compelled to pay for the same character of special improvements on the same or equal basis.

Undoubtedly the legislature only had in mind the method of special assessments against the abutting owners for the improvement by paying in front of their property for their special benefit. Improvements of a street for the general public benefit to be paid for out of a general fund, and not to be assessed against the abutting owner, was not intended to be covered by the legislative act.

The paving done by the city of Hattiesburg in 1907, and paid for out of the general improvement fund realized by the sale of bonds, would be paid for on an equal basis of taxation as between all property owners in the city, such

general improvement rebounding to the common benefit of the general public, and therefore paid for by general taxation of the public. See *Edwards House* v. *Jackson*, 91 Miss. 470, 45 So. 14.

The majority opinion decides that when a municipality does any paving whatever and pays for it by general taxation, even though the street paved is of such importance as to be a general public benefit, it thereby forever forfeits its privilege to pave any other outlying streets by special assessment against the abutting property owners thereon. This conclusion is manifestly unsound, in view of the statutory history of the subject, and the phraseology of the act of 1912.

If the act of 1912 had intended that the method of paving by special assessments against the abutting owners could not be adopted where the city had previously made special improvement of a general nature out of the general fund, I cannot conceive why the act would have so specifically referred to the assessment of the cost against the abutting owners on the street which was improved by the pavement. The *Doxey case, supra,* supports the view inferentially that the act of 1912 meant to deal only with special improvements where the cost is assessed against the abutting owner.

Of course this court is not concerned with consequences, but the error, in my judgment, the majority has made herein is heightened, and becomes more grievous when we bear in mind that it may be reasonably anticipated that not only the city of Hattiesburg, but other municipalities in the state, will be made to lose large sums of money expended for special paving improvements, notwithstanding the fact the abutting property owners have received the paving improvement as a special benefit to their property.

ETHRIDGE, J., joins in this dissent.