## STEVENS *v.* CITY OF HATTIESBURG.

(In Banc. Nov. 19, 1923.  Suggestion of Error Overruled Dec. 31, 1923.)

[98 South. 231.  No. 23278.]

MUNICIPAL CORPORATIONS.  *Assessment for repair of paving unauthorized.*

> Neither chapter 260, Laws of 1912, chapter 224, Laws of 1918, nor section 5835, Hemingway's Code (section 3338, Code of 1906), authorize a municipality to repair paved streets and assess the cost against abutting property owners; it has no such authority.

APPEAL from chancery court of Forrest county.

HON. BEE KING, Chancellor.

Bill by the city of Hattiesburg against Mrs. M. E. Stevens.  Judgment for plaintiff, and defendant appeals. Reversed and judgment rendered.

*Stevens & Heidelberg,* for appellant.            .

As the bill of complaint shows, and all the orders and proceedings, copies of which are exhibited with the bill, the city authorities were proceeding under chapter 260 of the Laws of 1912 and under chapter 224 of the Laws of 1918.  This appeal therefore, involves the determination of the question whether or not these statutes authorized the making of a special assessment against abutting property for the cost of repairing pavement already laid on the street.  Involved in the instant case also is the question whether or not the work done on Bay street under the proceedings in question were repairs to pavement or construction of pavement.  This case turns upon a different question than that involved in the other paving cases from the city of Hattiesburg set for hearing in this court for the 24th of April, 1923, and commonly referred to as the Hattiesburg Paving cases,

the question involved in the instant case being limited as above indicated.

Section 1 of chapter 260 of the Laws of 1912 empowers the municipality to tax the cost of special improvements against the property owners whose property adjoins any street ordered to be improved. Section 2 of this act, however, defines the words, "special improvements." We quote the definition given of these words: "When the words 'special improvement' are used it shall only include the construction of the improvement on streets and not repair of same, but when applied to sidewalk improvement it shall include both the construction of the improvements and repair of same on sidewalks." This same definition of the words "special improvements" appears as part of section 5942 of Hemingway's Code.

Any authority for making special assessments against the property of the appellant for the improvements done under the said resolution and orders of the city authorities of Hattiesburg must be found in sections 1 and 2 of chapter 260 of the Laws of 1912. The other act referred to in the proceedings of the mayor and board of commissioners, viz., chapter 224 of the Laws of 1918, confers no authority, indeed it does not attempt to confer any, to make repairs to pavement in streets at the expense of the abutting property owners.

It will be noted that the said chapter 225 of the Laws of 1918 simply undertakes to authorize municipalities of the class named "to borrow money, give notes or issue certificates of indebtedness to pay for the repairing of paved streets." The amount borrowed, however, is limited by the amount of any special assessment levied against the property abutting on the street which is to be repaired. The act does not authorize special assessments to be made for repairing pavement in a street and seems to have been passed, either upon the mistaken idea that there was an existing law authorizing the re-

pairing of pavements in streets at the expense of the abutting. property owners, or else that the legislature would pass an act conferring such authority upon municipalities.

The authority of the city to make repairs at the expense of the abutting property owners was in no wise affected or enlarged by the adoption of chapter 224 of the Laws of 1918. The court will not enlarge the provisions of these statutes under which the city was proceeding, indeed it cannot do so. The court can only enforce the law as it finds it. In the case of *Davis* v. *Doe,* 25 Miss. 445, it was held that at common law the only damage which a jury could assess in an action of ejectment was a nominal damage. At a time when the common-law rule on this subject had not been in any way changed by legislative enactment in Mississippi, the legislature passed an act in 1846 from which it was apparent that the legislature was 'laboring under the erroneous idea that other damages than nominal damages could be recovered in an action of ejectment. It was argued in that case that this act of the legislature impliedly gave to the jury the power to assess other than nominal damages, but the court held that even though the legislature passed the act under the belief that such a power already existed, this would not give the jury such a power.

This court said in the Mayes case, which involved a bond issue in the city of Hazelhurst: ''This city is a municipal corporation, operating under the Code chapter on municipalities. It is an elementary principle of law that as such it has no powers except those delegated to it by the state. It is equally well established that its powers are to be construed most strongly against a right claimed by it and not clearly given by the statutes. The officers of a municipality are not the agents of the people. They are merely officers elected to perform certain mu-

nicipal or local governmental duties defined by the stat-
utes of the state. These duties cannot be extended by
mere implication to grave and important acts not au-
thorized by law. Nothing but legislative grant can do
this. When there is any doubt as to whether or not a
municipality has the power to do or not to do a certain
thing, this doubt must be resolved against its charter
powers, unless it is plainly manifest that the power is
conferred upon the municipality to act. *Crittenden* v.
*Booneville,* 92 Miss. 277, 45 So. 723." *City of Hazel-
hurst* v. *Mayes,* 96 Miss. 663-4.

In the headnote to the case of *Monaghan* v. *The State,*
reported at 66 Miss. 513, it is said: "The courts will not
yield to considerations of expediency, and supply by ju-
dicial construction what is palpably omitted from a
statute."

The special assessment in question cannot be upheld
upon any contention that the improvement made was a
construction of pavement rather than the repair of pave-
ment. It will be of interest to refer here to the definition
of the word repair, and to some of the adjudicated cases
in which the meaning of the word has received judicial
interpretation. Webster defined the word as follows:
"To restore to a sound and good state after decay, in-
jury, dilapidation and partial destruction." This defi-
nition has been repeatedly approved and recognized by
the courts of the land in many decided cases. By re-
ferring to Words and Phrases, First Series, Volume 7,
page 6069, the court will find numerous cases in which
this word has received judicial interpretation under va-
rious circumstances and as applied to various sorts of
work. On said page 6069 will be found the following:
" 'Repair means to mend, add to, or make over; restora-
tion in a sound or good state after decay, waste, injury,
or partial destruction. *Farraher* v. *City of Keokuk,* 111
Iowa, 310, 313, 82 N. W. 773; *Martinez* v. *Thompson,* 80
Tex. 568, 571, 16 S. W. 334, 335." At page 6100 of said

volume will be found the following: " 'Repair means
to mend, add to, or make over, and differs from 'recon-
struct,' which means to construct again, or rebuild—so
that, where a sidewalk was reconstructed, rather than
repaired, and such reconstruction, under a notice to the
owner to repair or that the same shall be repaired by the
city, does not authorize the city to recover for such re-
construction. *Farraher* v. *City of Keokuk,* 82 N. W. 773,
774, 111 Iowa, 310; *State ex rel. Kansas City* v. *Corrigan
Consol. St. Ry. Co.,* 85 Miss. 263, 55 Am. Rep. 361; *Wes-
tern Paving & Supply Co.* v. *Citizens' St. R. Co.,* 26 N. E.
188, 191, 128 Ind. 525, 10 L. R. A. 770, 25 Am. St. Rep.
462."

" 'Repair,' as used in a city charter, giving the city
authority to repair streets, does not include the right
to repave. *Hurley* v. *Inhabitants of City of Trenton,* 49
Atl. 518, 66 N. J. Law 538." " 'Repair,' as used in a
city ordinance requiring a street railway to keep and
maintain a portion of the street inside its rails and for
two feet outside of them in good and sufficient repair,
cannot be construed to mean repave them with a new
and different material selected by the city. *Dean* v.
*City of Paterson,* 50 Atl. 620, 621, 67 N. J. Law, 199."
"Webster defines the word 'repair' to mean to restore
to a sound or good state after decay, injury, dilapida-
tion, or partial destruction, as to repair a house, a wall,
or a ship. He defines 'reconstruction' to mean to con-
struct again, to rebuild. Where a brick pavement was
taken up, the grade changed, new sand used, and part
of the bricks used were new ones, it was not a repair
of the pavement, but a reconstruction, within Ky. St.
2835, apportioning the cost of reconstruction of sidewalks
to the front foot of the adjoining property. *Levi* v.
*Coyne* (Ky.), 57 S. W. 790, 791."

"A street railway company, under a charter requir-
ing it to keep in repair the grounds between its tracks,

is not liable for repaving of such space. *City of Williamsport* v. *Williamsport Pass. R. Co.*, 52 Atl. 51, 203 Pa. 1." Additional cases involving the definition of the word "repair" will be found collated at 4th Words and Phrases (2 Series), page 271 et seq.

It will be borne in mind that section 2 of chapter 260 of the Laws of 1912, being section 5942 of Hemingway's Code, limits the "special improvement" for which property may be specially assessed to construction work only. It will be borne in mind also that the board was laboring under the erroneous impression evidently that chapter 224 of the Laws of 1918 conferred upon the municipality the power to specially assess to the abutting property the cost of repairing pavement in a street of the city. This is manifest from the repeated reference made to the said act of 1918 in the proceedings of the municipal commission.

We confidently submit to the court, therefore, that in the present case the city of Hattiesburg undertook to repair pavement in a street at the expense of the abutting property owner and to specially assess the abutting property contrary to the express provision of chapter 260 of the Laws of 1912; that there was no statute which authorized the special assessment here involved; that the proceedings of the mayor and board of commissioners of the city of Hattiesburg relating to the special assessment undertaken to be levied were void and of no effect.

*Messrs. D. E. & C. W. Sullivan,* and *Green & Green,* for appellee.

This bill was filed to enforce this assessment and Mrs. Stevens, appellant, demurred to the bill on the ground that the city was without lawful authority to make the special assessment referred to in the bill, and that the assessment was made for the purpose of repairing the pavement of a street and not for the purpose of con-

structing such pavement, and, therefore, the special assessment was void, and also that the bill shows on its face that the assessment was without authority of law.

This demurrer was overruled and the appellant, Mrs. Stevens, declined to answer further and a final decree was taken against her enforcing the assessment. There is no merit in the demurrer. The city had power to order this work to be done at the expense of the abutting property owners, the city to pay its *pro rata* part of the cost abutting the street intersections.

As to the general power of the city to make such an assessment, we refer to the suggestion of error filed herein in *Firm Lumber Company* v. *City of Hattiesburg,* to avoid prolixity. That case involved the power of the city to pave at the expense of the abutting owner. This case involves: (1). Power of the city to make repairs of pavements at the expense of the abutting property. (2). Whether the work ordered and done was not a work of reconstruction within the meaning of "special improvement" and not a work of "repair." (3). Whether appellant is not precluded by the approval of the assessment from questioning its validity.

Section 5835, Hemingway's Code, confers power on the city "to exercise full jurisdiction in the matters of streets, sidewalks, sewers, and parks; to open and lay out and construct the same; to repair, maintain, pave, sprinkle, adorn, and light the same." Thus, full jurisdiction is given "to repair, maintain, pave streets."

The power existing, how shall the exercise of power be paid for? It is true that chapter 260, Laws of 1912, sections 5941-5942, Hemingway's Code, provide: "When the words 'special improvement' are used, it shall only include the construction of the improvement on streets and not repair of same, but when applied to sidewalk improvement, it shall include both the construction of the improvements and the repair of same on sidewalks." This involves, primarily the definition of a "repair" of which *infra.*

While this was provided by chapter 260, Laws of 1912, effective March 5, 1912, it was provided by chapter 135, Laws of 1912, effective March 16, 1912, eleven days after the passage of chapter 260, Laws of 1912, that munici- palities were given power to issue notes "to pay for construction or laying of sidewalks and paving of streets, the amount borrowed on the amount of notes or certificates given, shall not exceed the amount of special assessments levied against the property abutting against the street paved or on which the sidewalk is laid or constructed."

It was then by chapter 147, Laws of 1916, section 5875, Hemingway's Code, provided that every municipality should have power to issue certificates of indebtedness "to pay for the construction or repair of sidewalks and the paving of streets. The amount borrowed shall not exceed the amount of the special assessments levied against the property on the streets paved."

This chapter 224, Laws of 1918, would deny to the municipality power to borrow money to repair streets unless the abutting property was charged with the assessment. In view of the full power given by section 5835, Hemingway's Code, to repair, maintain and pave, streets, and the express provisions of chapter 224, Laws of 1918, limiting the power to borrow money to repair streets unless there is a special assessment against abutting property and limited by such express assessment, it would seem that construing these statutes together that the legislative intent was that municipalities should have power to repair the pavements of streets at the expense of the abutting owner, and that such repair would be a "special improvement," notwithstanding the fact that in 1912 under chapter 260 the legislature had defined a special improvement as not to include repair of pavement.

While the appellee calls the work to be done "repair" it fully described the work which is to be done and such

work is not a "repair" but a "reconstruction" or "re-pavement." Reconstruction or re-pavement are special improvements when repairs might not be. The exhibit to the bill describing the work to be done controls the allegations of the bill. *House* v. *Gumble,* 78 Miss. 259; *McKinney* v. *Adams,* 95 Miss. 832.

That which is called a "repairing" (Rec., 8) is thus described in the exhibit: "That said repairs shall consist in cleaning off the present pavement down to the concrete basis and re-surfacing with a one-inch asphalt binder and a one-inch asphalt wearing surface, the full width of said street as now paved and the work shall be done according to the plans and specifications prepared by the city engineer and adopted and approved this day with the city clerk at the city hall."

Calling the word a "repair" when its legal effect is other than a repair, would not control the court, but the court will construe the instrument according to its true tenor. As said in *Comstock* v. *North,* 88 Miss. 754: "Where the right of a party to a suit is predicative of a writing the court will be governed by its essential character, and not by its improper designation in the pleadings." There the pleadings characterized the instrument as an option and the court construing the instrument, held it not to be an option and gave it effect according to its true meaning.

*Fuchs* v. *The City,* 158 Iowa, 392, is directly in point holding that while the city had no power to assess repairs on abutting property, but had power to reconstruct, and where the bill was filed to enjoin the assessment under an ordinance providing for "re-surfacing with sheet asphalt" certain streets, "the re-surfacing to consist of removing the present asphalt wearing surface and binder course from a five-inch concrete base, which now lies in said street, said concrete base being a part of the present asphalt paving existing upon said avenue, and re-surfacing the said five-inch concrete base with a one-half inch

binder course and a one and one-half inch wearing surface of sheet asphalt," that this defined a reconstruction and not a repair and held: "That the work contemplated involves the destruction of the original structure except the foundation. 4. That the contemplated improvement is a new and original structure upon the old foundation. 5. That the work of rebuilding on the old foundation is a reconstruction of the asphalt pavement heretofore existing, and we further hold that being a reconstruction, the cost thereof was properly assessable against the abutting property."

And that case further held that whether it was a repair or a reconstruction was a question of fact (Page 401). *O'Meara* v. *Green,* 25 Mo. App. 198, held that there was a distinction between repaving and repairs, and that it was a question of fact determinable by the character of the work. There the reverse of the present case existed. The city called "repairs," "reconstruction," and undertook to charge the cost of the repairs as reconstruction on the abutting property. *Dickinson* v. *Detroit,* 111 Mich. 480, 482; *Barber Asphalt Co.* v. *Muchulinger,* 105 Mo. App. 47, 53-5; *In re Phillips,* 60 N. Y. 16; *People* v. *Buffalo,* 52 N. Y. (Appellate Div.) 157, affirmed 66 N. Y. 604, are directly in point in showing that a reconstruction or repavement is not a repair.

Dillon on Municipal Corporations (5 Ed.), page 2280, declares that the power to require "subsequent repairing or improvement" is a continuing one and that the power to compel property owners to pave, ordinarily extends to compelling them to re-pave when required by municipal authorities.

In *Robertson* v. *Omaha,* 44 L. R. A. 534, it was held that where a street had been paved with blocks laid on a concrete base and the blocks had become worthless and were entirely removed and replaced with vitrified brick laid on the old base, such new "improvement" is not an "ordinary repair" within the meaning of the statute, but is a

repavement of the street and a special assessment might be made against the abutting property to pay therefor.

*Levi* v. *Coyne,* 57 S. W. 790, holds that the re-building or re-paving, although done partly out of the old material, constitutes a "reconstruction" and not merely a repairing of the same.

"Where the assessment has been made, as here, without objection from the property owner, it is conclusive, as an appeal from that assessment is the exclusive remedy of the property owner." *Jackson* v. *Buckley,* 85 So. 122; *Bushlog* v. *Gulfport,* 72 So. 898.

Argued orally by *R. W. Heidelberg,* for the appellant, and by *D. E. Sullivan* and *Marcellus Green,* for the appellee.

HOLDEN, J., delivered the opinion of the court.

The appellee, city of Hattiesburg, filed its bill in the chancery court seeking to enforce a lien upon a certain lot of land belonging to Mrs. Stevens, appellant, situated on Bay street, to satisfy a special assessment which the city had undertaken to make against the lot for repairs made by the city to and upon an existing pavement of said street in front of and abutting the lot. From an order overruling a demurrer to the bill and decreeing the lot be condemned and sold to satisfy the assessment, Mrs. Stevens appeals to this court.

The question involved in the case is whether or not the municipality had legal authority to repair existing paved streets and assess the cost thereof against the abutting property owner. The question presented for our decision is not whether the municipality may construct pavements of its streets and assess the abutting owner with the cost thereof, nor is it a question of repairing or constructing sidewalks; but we are called upon to determine precisely whether or not the city had the lawful right to repair the pavement of the street and assess the cost against the abutting owner. In the case before us it is contended by the city that the repairs involved was a construction—or

reconstruction—of the pavement on the street and that the city had authority to make the improvement and assess the cost against the abutting owner under chapter 260, Laws of 1912.

The appellant urges that the improvements made in this case were repairs and not construction as a matter of fact, and that the improvement was treated as one of repairs by the ordinances and notices enacted and promulgated by the city. However, we think it unnecessary to decide the question of fact as to whether the improvement was one of construction or one of repairs, because if the assessment was attempted to be made for construction of the pavement against the abutting owner under chapter 260, Laws of 1912, then the city must fail in its suit because of the recent decision of that question by this court in *Firm Lumber Co.* v. *City of Hattiesburg,* 98 So. 145, decided October 29th, which held the city of Hattiesburg was powerless to enforce assessments against abutting property owners for paving streets.

Therefore, if the improvement in this case was a construction of the pavement and not repairs, then the appellant, under the above case, is free of liability in the premises. But, assuming the improvement was one of repairs to the pavement, then the appellant property owner would not be liable for the costs unless the municipality had legal authority to make such repair improvement and assess the cost thereof against the abutting owner.

We have been unable to find any statute which expressly or impliedly authorizes the municipality to repair existing paved streets and assess the abutting owner with the cost thereof. It seems the legislature, for some unknown reason, has failed to grant such authority.

It will be conceded by all that legislative authority is necessary before a municipality may repair a street and impose a special charge against the abutting property owner. There must be an express statute delegating the

power and prescribing the manner and method of the procedure for making the improvement and taxing the abutting property holder therewith. There is no such statute enacted by the legislature, and consequently the municipality of Hattiesburg had no power to repair paved streets and charge the cost against the abutting owner.

Counsel for the city of Hattiesburg do not attempt to point out any particular statute plainly giving the city the authority to make repairs of a paved street and assess the cost against the abutting owner, but they refer to general statutes which seem to bear indirectly upon the subject and possibly indicate that such authority may have been contemplated by the legislature. However, we do not find the legislature expressed such authority to municipalities to make street pavement repairs at the expense of the abutting property owners.

Counsel for the city cite chapter 224, Laws of 1918, as conferring authority upon the city to make repairs of street pavement and assess the expenses against the abutting owners. But we do not understand this act to confer such power upon the city. The act seems to contemplate that some other statute was passed, or would be passed, granting municipal authority to make repairs of paved streets by assessment against abutting owners, and that this legislation (chapter 224, Laws of 1918), would aid such plan of special improvement by empowering the municipality to borrow money and give notes or certificates of indebtedness to pay for the repairing of paved streets, to be ultimately paid for by abutting owners.

But counsel for the city urge that even though no authority is given by a special statute to make such pavement repairs, yet the city has authority to make the repairs and charge them to the abutting owner, under section 5835, Hemingway's Code (section 3338, Code of 1906), which provides that the city shall have power "to exercise full jurisdiction in the matter of streets, side-

walks, sewers, and parks; to open and lay out and construct the same; to repair, maintain, pave, sprinkle, adorn, and light the same.''

It is contended this general statute confers authority upon a municipality to make repairs of paved streets and compel the abutting owner to pay the costs thereof. We do not think the position is sound. The statute does not authorize the making of special improvements and assessing the cost against the abutting owner, which assessment becomes a lien upon the property of the citizen. The statute refers to general improvements, and gives full and general jurisdiction in the matter of streets, but confers no authority to make special street improvements at the expense of the abutting owner, because the power is not delegated nor is the method and procedure for such purpose prescribed, which is necessary in order to impose and enforce the charge against private property for special improvement of the abutting street.

In view of these conclusions the decree of the lower court is reversed and judgment entered here for the appellant.

*Reversed and judgment here for appellant.*

COOK, J., took no part in this decision.