CITY OF JACKSON *v.* DOXEY *et al.*

[91 South. 348. No. 22521.]

MUNICIPAL CORPORATIONS. *Rule as to assessment of property where work had commenced prior to statute providing for assessment of abutting owners for cost thereof.*

A municipality which had commenced to pave its streets prior to the enactment of section 4 chapter 260, Laws 1912 (section 5944, Hemingway's Code), and to pay therefor by assessing a proportionate part of the cost thereof against the abutting property owners, must continue as long as the provision of the statute so requiring remains in force to assess the cost of street paving thereafter done against the abutting property owners in the same proportion that such owners were assessed on the streets paved prior to the enactment of the statute.

APPEAL from chancery court of Hinds county.

HON. V. J. STRICKER, Chancellor.

Action by T. B. Doxey and others against the city of Jackson. From decree overruling a demurrer to the bill, the defendant appeals. Affirmed, and remanded with leave to defendant to answer.

*W. .E. Morse,* for appellee.

In the first place, the city of Jackson never did adopt a method for the assessing of special improvements. It is true that the special improvements made from 1906 up to and including 1913 were made on the basis of two-thirds of cost being assessed to the property-owners and one-third being assessed to the city of Jackson. But this was a mere matter of discretion with the city. It was at a time when the city had more money to expend on public improvements than it has at the present time. The city assessed the street car line with the entire part of its street car area and for two feet on either side. This shows that the city had not and was not assessing all of its property-owners on a basis of two-thirds the cost to them and one-third to itself. This was thirteen years ago, before the city was operating under its present commission form of government.

The section complained of with reference to this particular point reads as follows: "But the method adopted by the mayor and board of aldermen for the payment of special improvements must be the same on all streets of the municipality."

Up to this time the city had the discretion as to whether they would grant extension of ten years for the payment of the indebtedness to the property owner, or they could call on him to pay the entire amount at once. Manifestly, this would work a great hardship and would allow the city to take an unfair advantage of certain property-owners in the event they so desired. This piece of legislation was put in there for the purpose of preventing a municipality from punishing certain property-owners and allowing others to receive the benefit of deferred payments.

The section continues, "and in case any municipality has already commenced any particular kind of special improvement the municipality must continue to assess the cost on all owners of the property in the municipality in the same way that the assessment was made before the

passage of this act, to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis provided the provisions of this act shall not apply to property owned by the state." This is a saving clause saving special improvements under construction under sections 3411 and 3412 of the Code of 1906, so that the improvements might be continued under this new law.

It expressly states that in case any multiplicity has already commenced any particularly kind of special improvement, the municipality must continue. to assess the cost on all the owners of property. This section applies to work which was commenced. It also shows that it was meant to cover only one street at a time. In other words, the section applies to street by street and not to the whole municipality. The correct interpretation of that section should be that in case any municipality has already commenced any particular kind of special improvement the municipality must continue to assess the cost on all owners of property on that street in the same way that assessment was made before the passage of this act. It would be manifestly unfair to assess the cost on all the property-owners in the municipality for that special improvement for the reason that they would not receive the benefit, but it should be limited to that street. It further provides that the assessment on these streets should be in the same way that the assessment was made before the passage of this act. This is the whole intent and purpose of the legislature in inserting this clause therein.

The court can readily see that this is a fair and reasonable interpretation of this section. In fact, the city of Greenwood and the courts there consider that this section applies to street by street. The parties are not in the same position, their rights would not be equal on different streets. One street is used by the public generally and one used very little except by the resident owners of the street. Some streets are so narrow that the entire cost of this street would be less than one-third the cost of a street such

as North State street or Capitol street.  In fact, Minerva is a street of about thirty feet and if the property-owners were to pay for the entire amount it would be less than having to pay one-third on North State street.

The court will understand that when we say pay for the entire amount that it means that each side would pay one-half.  There is really only a difference of one-sixth which the property-owner has to pay in the case over what he had to pay under the old arrangement.  Under the old arrangement the city never did adopt a method.  There was no ordinance passed prescribing the method.  There was a custom followed, but that custom has not been followed entirely as in the instance of the street cars.

The municipalities are growing; they have not sufficient finances to carry on the special improvements asked for by the property-owners.  The property-owners by a majority of the residents on the street petitioned for the special improvement.  They were notified both orally and by the notice declaring the work necessary that they would be required to pay for all the special improvements.  They did not file a sufficient protest, and then when the city begins work they ask for an injunction restraining the city from completion of its work.

The hands of the municipality are tied by this statute and by the economic conditions, if the interpretation which is placed on the same by appellees should be upheld in this court.  We do not think that this method is right.  We think that the section applies solely and only to each street as outlined above.

We think that the ordinance is valid and binding and that the municipality had a right to assess these property-owners with one-half of the cost, which is only a fraction more than was under the other method.  The statute shows on its face that it applied only to one street at a time and not to the whole municipality.  It showed that it applied to the method of payment and not to the method of assessing.

*Green & Green, Amici Curiae.*

To construe section 5944 as did the chancellor, would be judicial legislation and to repeal the municipal powers vouchsafed in every other section of this law.

Note further section 5951. After there has been notice published and it has been determined to go ahead with the improvement, then the board shall have full power to cause the special improvements, thus vesting in the municipality expressly, the power to levy the tax to pay for the improvement. This does not mean to pay for a part of the improvement; has no reference to the method of payment, or as to the method of making the assessment, but is a direct and positive authorization, to pay for the improvements, with special assessments of taxes. We cannot conceive how the power so to do could be made in any manner broader, or how the right of the municipality could be in any wise further expanded.

Now, by section 5953, the property-owner shall have the right to make the special improvement himself. This does not have reference to making a part of a special improvement, but all of it, and when there has been a failure, then and not until then the mayor and board of aldermen shall cause all special improvements to be made in the manner hereinafter required and the cost of the work shall be assessed against the owner, as hereinafter directed. Now, this is but a reiteration of the proposition heretofore advanced, and not the phraseology, as hereinafter directed. Section 5944, upon which reliance is placed, precedes, and hence cannot qualify, or control the declaration here made which, under section 5956 and 5958, make it absolutely requisite that there should be an assessment embracing the entire cost, not a part of it, and this entire cost of the total improvements is that which, under these two sections, upon failure by the property-holder to do the work, is to be assessed. The declaration, as hereinafter directed, precludes any integration of the alleged limitation of section 5944 from circumscribing sections 5956 and 5958, and we direct particular attention to the fact that this provision,

as hereinafter directed, was re-enacted by the legislature in 1914, chapter 211, and therefore constitutes the latest legislative declaration as to the allocation of cost arising from the assessment, being re-enacted two years after the passage of section 5944, and therefore constituting the latest legislative declaration, we have the provisions that the mayor and board of aldermen shall cause all special improvements to be made in the manner hereinafter required and the cost of the work shall be assessed against the owner, as hereinafter directed. Thus, at a point of time two years after the original passage of the act making an express legislative declaration unequivocal, unambiguous and impossible of misapprehension, even if counsel is correct as to section 5944 being effective as of its original date here we would have a modification, a repeal, and a readoption of the construction wherefor we contend.

Counsel for appellant contends that the concluding portion of section 5944 modifies, controls and constricts the express provisions which we have heretofore quoted, but this court will perceive that the only fund appropriable is the general improvement fund, and both by section 5943 and section 5945, the council is given a right to use, or not to use, in their discretion, and under the sections which we have heretofore quoted, the total cost is to be computed, and when so computed, is then to be apportioned.

But counsel says that section 5944 declares, in case any municipality has already commenced any particular kind of special improvement, the municipality must continue to assess the cost on all owners of property in the municipality in the same way that the assessment was made before the passage of this act to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis, but the formula here proposed is absolutely unworkable, if counsel's contention is correct, which we deny, for the reasons hereinbefore set forth, because there has never been, up to this time, any street paving made of concrete alone. All street paving,

up to this time has been of either asphalt, wood blocks, vitrified brick, bitulithic or special prepared patented preparation. Now, for the first time since the war, the municipality finds itself constructing its pavements in outlying districts of residential property with the same character of construction as is approved by the United States Government for the construction of country roads. Upon this basis, it has paved West Capitol street at its extreme western limits, and therefore, the property-holders have executed their notes to the city upon the basis of one-half, and this improvement has consummated and is now being enjoyed. The difference between the pavements is a fundamental factor, and there has never been any street pavement in outlying residential sections done with concrete before. The cost varies between the expensive heavy street covering required for inside business property and the comparatively inexpensive preparation requisite for outlying residential districts. Furthermore, as pointed out by counsel, the width of the streets and the width of the paving varies greatly to accommodate the public exigencies, and factors of discrimination are brought about by the railroad tracks centering nearly all of the previously paved streets.

The formula proposed, if counsel is to be followed, subverts fundamentally the exercise of the power. The city has to deal with street intersections and the portions of paving fronting on public property, and these factors have so been integrated into the cost of previous paving as to produce a formula that is impossible of exact figuring, which is annexed as an exhibit to this brief merely to show the complexities that would result; thus showing the impossibility of making an assessment in the same way that the assessment was made before the passage of this act to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis, because there has been no such formula, and to attempt to prescribe a formula from the exigencies of the city is absolutely impossible.

It is true the averment is made in the bill that a one-third figure was used, and for the purpose of demurrer this has been admitted as to one street, but there were many streets and many propositions, all of which are shown in the appendix figured by the city engineer, and as this is an appeal to settle principles, it appears that the effect of limiting the provisions which are clear and concise by the attempted construction of appellee's counsel, would be to thwart public improvement by a misconception inherent in some being unfamiliar with the underlying factors, when such person assumed that there was therefore a factor which would be uniform.

The assessments made in the city of Jackson prior to this Act are, therefore, multiform due to various causes, and the draftsmen of this provision overlooked the variance in the costs of materials, if counsel for appellee is to be followed. Thereunder, the parties were to be compelled to pay for the same character of special improvements on an equal basis. There has been the most fundamental change in the cost of labor and material, and if this fundamental change in the cost of labor and material must find expression in paving to be done, then so to construe this act would be to preclude the limit of pavement in Jackson, or elsewhere, because the factor of equality, made on the basis of counsel's contention, has been eliminated by circumstances over which no party had any control.

Thus, with utmost deference, we submit that the formula proposed by section 5944 is absolutely unworkable for (1) failure to appreciate the factors integrated; (2) because of the variant cost; (3) because there has been no uniform formula that could be applied where divers improvements have been made; (4) because this provision is absolutely inconsistent with the express declarations of the other provisions of the act and was passed under, if counsel for appellee be followed, a misconception of what the law had been, as under the previous law the entire cost must have been assessed precisely as is required in this act.

128 Miss.—40

There is but one reasonable interpretation to be put upon this section 5944, and that is the one which we have put, viz: that it does not apply to the amount of the assessment. This is covered by the other sections. It applies only to the method adopted by the mayor and board of aldermen, and that has been consistently uniform. The method of payment is not the amount of payment, and the method of payment is admeasured by the manner wherein the assessment is to be made, and therefore, these assessments for these special improvements must be made either in a lump, or for a period of ten years, to conform to the method which was adopted by the mayor and board of aldermen. These two sentences are part of the same section and must be construed together, and where the mayor and board of aldermen have adopted a method for the payment of the special improvement that must be the same on all streets, and in order to make it the same on all streets, the legislature added the additional clause making the assessment therefor authorized conform to the method adopted. This interpretation does not conflict with the express provisions of sections 5956 and 5958, and may harmonize the entire act.

In *Gibson* v. *Brittennum,* 56 Miss. 232 there is a discussion of the problem involved here, and under it, it is the duty of this court to so limit section 5944 as to make it harmonize with every other section contained in the act wherein there is an express provision giving the municipality direct power to either appropriate, or not appropriate the general improvement fund; and further, the direct power requiring the report of the entire cost, and then after such report, that the entire cost of the whole improvement should be apportioned along the abutting property.

*W. H. Watkins,* for appellee.

The original bill of complaint in these cases alleges that prior to the 15th day of March, 1922, the city of Jack-

son had constructed pavements along certain of its streets, and that it had adopted a system or method of assessment therefor, by which the city paid one-third of the cost of construction, and the property-owners the remainder, except that where a street had a street car line upon it, the street car company paid for the special improvements covered by its track and two feet upon each side thereof.

The original bill of complaint alleges and the demurrer admits that such was the method or system adopted and in use by the appellant prior to the passage of chapter 260 of the Laws of 1912. The bill of complaint alleges, and the demurrer further admits that in November, 1921, the city undertook to pave Minerva street in the city of Jackson, and, in doing so, adopted an entirely new and different method and system of providing the cost thereof, in that for the first time it assessed the property owners along each side of the street with the entire cost thereof, there being no street-car line along such street.

The question is therefore squarely presented as to whether or not such course is permissible under the Act of 1912 above referred to. At the threshold of a discussion of this character, there should be taken into consideration the rule of construction adopted by courts in construing statutes of this character. The measure of the right of appellant to construct this special improvement and its manner and method of collecting therefor, and enforcing a lien against the property of the individual must be derived from the Law of 1912, above referred to, and when we approach a discussion thereof, we must bear in mind the usual rules of construction, which are that such acts will be strictly construed against the municipality and in favor of the individual, and the rights of the municipality will not be enlarged by intendment.

In the case of the *City of Seattle* v. *Seattle Electric Co.,* (Wash.), 103 Pac. 807, the supreme court of Washington said: "Statutes conferring the power to levy and collect assessments for special benefits will not be enlarged by an equitable construction." *Buckley* v. *Tacoma,* 9 Wash. 253, 37 Pac. 441.

In the case of *Pettigrew* v. *City of Sioux Falls* (S. D.), 150 N. W. 772, the supreme court of South Dakota used the following language: "No question is raised as to the sufficiency of the specifications that had been adopted for each kind of pavement, and there is no ground for contention but that the proposed resolution referring as it does, to such specifications (*City of Connersville* v. *Merrill*, 14 Ind. App. 303, — N. E. 1112; *Chase* v. *Trout*, 146 Cal. 350, 80 Pac. 81; *Whittaker* v. *Deadwood*, 23 S. D. 538, 122 N. W. 590; 139 Am. St. Rep. 1076) and all following proceedings would have been valid, provided such resolution had named but one kind of paving material, and provided the notice for bids, and the bids had been confined to a pavement to be constructed of the one kind of material; but appellant contends that it is not a compliance with the statute to describe the improvements to be made in the alternative.

The authority to assess abutting property for street improvements is purely statutory, and the statutes should be strictly construed, to the end that the rights of the propery-owners be fully protected. *Mason* v. *City of Sioux Falls*, 2 S. D. 640, 51 N. W. 770; *Whittaker* v. *Deadwood*, *supra*.

In the case of *Flannigan* v. *City of Tulsa* (Okla.), 155 Pac. 542, the supreme court of Oklahoma said: "A city can create a valid municipal assessment for improving a street only when the improvement is made pursuant to law, and the mode established by statute is strictly followed. *Morrow* v. *Barber Asphalt Paving Co. et al.*, 27 Okla. 247, 111 Pac. 198; *McGrew* v. *Kansas City*, 64 Kans. 61, 67 Pac. 438; *Scott* v. *Hinds*, 50 Minn. 204, 52 N. W. 523.

In the case of *M. K. & T. Ry. Co.* v. *City of Tulsa* (Okla.), 145 Pac. 398, the supreme court of Oklahoma said: "Plaintiff, conceding the facts to be as assumed by the city, contends that it is not liable for any of the assessments sought to be imposed upon said lots, for the reason that the charter of the city does not authorize it. If there is

any reasonable doubt as to the power of the city to impose this tax, the doubt must be resolved against the power of the city. It seems to the writer of this opinion that such doubt so arises. In the first paragraph of the syllabus, in the case of *In re Unger,* 22 Okla. 755, 98 Pac. 999, 132 Am. St. Rep. 670, we laid down the rule thus: "A grant by the legislature of taxing power to a municipal corporation is to be strictly construed and any fairly reasonable doubt concerning the existence of such power is resolved by the courts against the corporation, and the power is denied. All acts beyond the scope of the power granted are void."

1 Page & Jones, Taxation by Assessment, section 229, reads: "Furthermore, assessment proceedings are proceedings *in invitum* and have for their ultimate object the taking of property from the individual owner without his consent. As is the case in all proceedings of similar character, such as taxation, the statutes conferring the power to impose local assessments must be construed strictly. The intention of the legislature to confer upon public corporations the power to levy local assessments must appear affirmatively. In case of fair and reasonable doubt as to the existence of such power, the presumption for construing the statute must be against its existence.

Further citation of authority is unnecessary. The foregoing citations are sufficient to demonstrate the well-established rule that the proceeding is *in invitum,* and, therefore, the statute must be strictly construed. With the rule of construction, let's take the statute in question and ascertain the legislative intent, and determine the liability of the appellee's property to the assessment. Sections 1, 2 and 3 of the Act, being sections 59410, 59413, of Hemingway's Code, conferred upon municipal authorities the power to cause special improvements to be made, and empowered the municipality to determine the manner in which the funds therefor should be raised. The municipality had authority to pay for the entire improvement out of the general fund. It had the authority to

issue bonds and levy taxes to pay therefor upon every bit of property, real and personal, within the municipality. Or, if the municipality thought the general fund insufficient the municipality was given authority to require the special improvements to be paid for in the manner provided in section 4 of the act.

When he approached section 4 of the act, which is section 5944 of Hemingway's Code, we find that the legislature was confronted with the fact that a different situation might prevail in different municipalities. The legislature was perfectly willing to submit to the municipalities the power to determine the source from which the funds should be deprived to pay for the special improvements, subject to the limitations and provisions contained in section 4, and, in making such provision, the legislature was confronted with the fact that in some municipalities no method or system might have been devised for the purpose of raising the funds, and the legislature accordingly gave such municipalities the authority to determine the source from which the funds might be used, whether out of the general improvement fund or whether assessed against the property-owner, provided the method should be uniform and applicable to all the streets of the city. The following is the language of the section: "The mayor and board of aldermen shall be the sole judges as to the necessity for the special improvements, and they shall be the sole judge as to whether or not the general improvement fund shall be used for the special improvements, or whether or not the cost shall be assessed against the property-owners as hereinbefore directed. But the method adopted by the mayor and board of aldermen for the payment of special improvements must be the same on all streets of the municipality."

The legislature, however, was confronted with the further fact, of which it had full knowledge, that street paving and similar improvements had been constructed in many municipalities in Mississippi and that, therefore, such municipalities had determined the method of raising the funds to pay therefor. Some municipalities might

have determined to raise the entire amount from the general fund, taxing all the property in the municipality therefor.   Other municipalities, as the city of Jackson, might have paid a portion out of the general fund, assessed the property with the remainder.   But the legislature intended by section 5944 to provide that where a municipality had adopted a system or method of raising funds with which to pay for such special improvements, that system should be continued in order that there might be no discrimination in the burden of taxation between property-owners on different streets in the municipality and, in order to insure that end, section 5944 contains the following provision: "And in case any municipality has already commenced any particular kind of special improvement, the municipality must continue to assess the cost on all owners of property in the municipality in the same way that the assessment was made before the passage of this act, to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis, provided the provisions of this act shall not apply to property owned by the state."

Taking the entire act in all of its parts and construing section 5944 in connection therewith, the intention of the legislature is perfectly clear.   (a) The municipal authorities were given power to determine the manner of raising money to pay for the special improvements, and where no particular method of raising the fund had been adopted, it was the duty of the municipality to adopt a method and apply is uniformly.   (b)   Where any method had been adopted, however, such method should not be departed from, but should be and remain the rule of that municipality in raising funds for the construction of special improvements.

*Clayton D. Potter*, for appellee.

It is our contention that under the provisions of chapter 260 of the Laws of Mississippi of 1912, that had not the

city already adopted a certain method of assessment that it could have, after the passage of that act, settled on any method of assessment it had desired, but that when the method of assessment is once fixed, that that same method must be adhered to to the end that the proportion of the cost of pavement would be the same to all property-owners in the municipality. In support of this we think it only necessary to set out the provisions of the statute. The opinion of this court could hardly make clearer the intention of the legislature than the language employed by the legislature itself. Section 4 of chapter 250 of the Laws of Mississippi of 1912, is as follows: "The mayor and board of aldermen shall be the sole judges as to the necessity for the special improvement, and they shall be the sole judges as to whether or not the general improvement fund shall be used for the special improvement or whether or not the cost shall be assessed against the property-owners, as hereinafter directed. But the method adopted by the mayor and board of aldermen for the payment of special improvements must be the same on all streets of the municipality; and in case the municipality has already commenced any particular kind of special improvement the municipality must continue to assess the cost on all owners of property in the municipality in the same way that the assessment was made before the passage of this act, to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis, provided the provisions of this act shall not apply to property owned by the state.

It is contended, however, that the method of payment intended by the act had to do with the terms of credit that would be extended to the various property-owners who would take advantage of this statute, and indeed that contention might be plausible except for the fact that the legislature was careful in making clear its intention by adding that the cost to all owners of property must be assessed the same way as it had been assessed before the passage of the act, and in order to be doubly sure that there would

be no misunderstanding of the statute the following was added: "To the end that all persons may be compelled to pay for the same character of special improvements on an equal basis." It is my contention that an equal basis means, of course, that everyone be required to pay in the same proportion. It could have no other meaning. The statute has reference to the cost and not merely to the credit extended. It has reference to the basis of assessment and not merely to the credit extended.

It is noted in the briefs of counsel for appellants that section 4, above-mentioned, provides that the mayor and board of aldermen shall be the sole judges as to the necessity for the special improvement, and that they shall be the sole judges as to whether or not the general improvement fund shall be used for special improvement, or whether or not the cost shall be assessed against the property-owners, all of which is true, but in the exercise of their judgment certain limitations are placed on the board in so many words. The first clause, or more general clause, is modified by the clause following it, providing that the method adopted for the payment of special improvements must be the same on all streets of the municipality, and that where the municipality has already commenced any particular kind of special improvement the municipality must continue to assess the cost on all owners of property in the municipality in the same way that the assessment was made before the passage of the act, to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis. If there is any doubt that the legislature had in mind the cost rather than the credit extended, the very last clause of section 4 would clarify the meaning of the legislature because it provides that the provisions of the act shall not apply to property owned by the state. Clearly, this would not have been necessary had the legislature had in mind the extension of credit rather than the cost of the improvement. The legislature wanted to make it clear that there would be no cost assessed against the state for such improvement.

Clearly then the legislature intended that the cost assessed against the property-owners should be the same or in the same proportion, on all streets of the municipality. It is true that originally under the terms of the statute the municipal board could have chosen any other proportion of cost as the proper proportion for the property-owners, but when once a method is adopted that same proportion must be charged as to everyone in a like situation.

I do not think it is necessary to attempt in any way to throw further light on the intention of the legislature because it is hard to think of more apt words than those used in the statute itself to convey to the mind that it was intended that everybody should pay in the same proportion the cost of special improvements in a municipality.

At the most, under any construction of the law, the whole cost of the improvement in front of one's property for the purposes of this assessment would be one-half, but as the city had adopted the system or method of paying one-third of the cost, the whole cost of the special improvement chargeable against the property-owner on either side is one-third, and, evidently, that was the whole cost the legislature had in mind, for as above stated if the whole cost of the improvement was charged against the abutting owner he would be charged, under that construction, not with one-half, but with all of the cost of the improvement. Such, clearly, the legislature did not have in mind, but only intended the word whole to refer to that proportionate part which should be charged to the abutting owner under the terms of the statute and under the method adopted by the municipality.

As it is conceded in this case that there are no funds in the municipal treasury to pay for the special improvement unless the property-owner pays for all of it, and in view of the fact that it was admitted that the ordinance would not have been passed except on the belief that the property-owners on both sides would be required to pay the whole cost, the ordinance in question is void and the chancellor was correct in finding under the circumstances that an injunction would lie.

Smith, C. J., delivered the opinion of the court.

This is an appeal to settle the principles of a case from a decree overruling a demurrer to an original bill. The bill alleges in effect that the appellant is about to pave Minerva street, on which the appellee is an abutting property owner, under an ordinance providing for the assessment of the cost of the paving to the abutting property owners, one-half to such owners on each side of the street; that prior to the enactment of chapter 260, Laws 1912, the appellant had commenced to pave its streets, its methods for payment therefor being to assess one-third of the cost of each street to the property owners on each side of the street, the remaining one-third being paid out of the appellant's general improvement fund. The prayer of the bill is that the appellant be restrained from paving Minerva street under this ordinance. Section 4, chapter 260, Laws 1912 (section 5944, Hemingway's Code), is as follows:

"The mayor and board of aldermen shall be the sole judges as to the necessity for the special improvement, and they shall be the sole judges as to whether or not the general improvement fund shall be used for the special improvement, or whether or not the cost shall be assessed against the property-owners, as hereinafter directed. But the method adopted by the mayor and board of aldermen for the payment of special improvements must be the same on all streets of the municipality; and, in case any municipality has already commenced any particular kind of special improvement, the municipality must continue to assess the cost on all owners of property in the municipality in the same way that the assessment was made before the passage of this act, to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis, provided the provisions of this act shall not apply to property owned by the state."

We are of the opinion that, where a municipality had commenced to pave its streets prior to the enactment of this statute, and to pay therefor by assessing a proportion-

ate part of the cost thereof against the abutting property owners, it must continue to assess the cost of street paving thereafter done against the abutting property owners in the same proportion that such owners were assessed on the streets paved prior to the enactment of the statute, as long as the provision thereof so requiring remains in force. Whether or not this provision has been repealed by an act approved March 27, 1922, entitled:

"An act to grant additional powers to the governing body of municipalities in the matter of apportioning the cost and making assessments for street improvements"— is not now before us, the ordinance in question having been passed before the enactment of that statute.

Affirmed and remanded, with leave to the appellant to answer within thirty days after the filing of the mandate in the court below.

*Affirmed and remanded.*