## CITY OF CANTON *v.* DAVIS.*

(Division B. Jan. 17, 1927. Suggestion of Error Overruled Jan. 31, 1927.)

[111 So. 137. No. 25960.]

1. MUNICIPAL CORPORATIONS. *City, beginning paving without assessing abutting property, cannot, against wishes of owners, assess portion thereof against property (Hemingway's Code, section* 5941 *et seq.*).

  Under chapter 260, Laws of 1912 (section 5941 et seq., Hemingway's Code), where a city begins paving its streets at the public expense without assessing benefits to abutting property owners, it cannot proceed, adverse to the property owner and against his wishes, to pave the street and assess a portion of the cost as special improvements against such property.

2. MUNICIPAL CORPORATIONS. *Unless orders for paving conform to conditions of petition as to cost, property cannot be charged on theory of contract or estoppel (Hemingway's Code, section* 5941 *et seq.*).

  Where abutting property owners petition the city to construct a paved street on specifically named conditions as to the cost and charges against the property owners, the city must, to charge such property of the owners thereof with the cost, accept the propositions as made. Unless its orders conform to the conditions in the petition, it cannot maintain a suit to charge the said property with a portion of the cost thereof, on the theory of contract, or on the theory of estoppel.

---

*Corpus Juris-Cyc. References: Municipal Corporations, 28Cyc, p. 1009, n. 78; p. 1107, n. 54.

APPEAL from chancery court of Madison county.

HON. V. J. STRICKER, Chancellor.

Suit by the city of Canton against J. R. Davis. From a judgment for defendant, plaintiff appeals. Affirmed.

*H. B. Greaves,* for appellant.

The record shows that only one portion of one of the main streets of the city of Canton had been paved, and that about ten years ago. There had never been any system of paving, only this one stretch of street, about three hundred yards long, on the street leading from the depot to the public square, this being the most traveled street in the municipality.

It is clear that under *Lumber Co. v. City of Hattiesburg,* 132 Miss. 1, 95 So. 250; and *City of Jackson* v. *Doxey,* 128 Miss. 618, 91 So. 348, that if the city had adopted a system of paying for the paving of its streets, then the above quoted case would cover this case and be conclusive in favor of the appellee, unless the appellee is estopped but no such statement of facts existed here as existed in those cases. There is nothing in the record to show that any system of paying for pavement had ever been adopted or that there has been any paving except the one stretch of street above referred to.

An examination of chapter 211, Acts of 1914, will disclose the fact that there is no requirement that the property owners must be notified. The only requirement is that they be given thirty days in which to make this improvement, if they so desire. Our contention is that the property owners once being in court are required to keep up with the proceedings and not be summoned anew in each step; otherwise, the process of paving or issuing bonds would be hazardous in the extreme. *Edwards House Co.* v. *City of Jackson,* 91 Miss. 429, 41 So. 14; *City of Jackson* v. *Williams et al.,* 92 Miss. 316, 46 So. 551; *R. R. Co.* v. *City of Jackson,* 96 Miss. 573, 51 So. 802; *Bryan* v. *City of Greenwood,* 112 Miss. 730, 73 So. 728; *Sparks* v. *City of Jackson,* 118 Miss. 502, 79 So. 67.

In the instant case, these parties petitioned the city to make this improvement, and in this petition is set out the nature and kind of material the street was to be paved with, and that they were satisfied that one-third of the cost was to be paid for by the property owners on each side and one-third by the city, and requested that the

ditch be covered with concrete, in consideration for which the city was to cover the ditch, which it did, and which the agreed statement of facts shows was done, which constituted a valid consideration on the part of the city, even though everything else fails, which will act as an estoppel precluding the defendant from objecting to having his property assessed with its portion of the cost.

In the resolution passed on September 6, 1923, it is directed that property owners shall have thirty days to make improvements. This seems not to have been published, but I see no directions for publication of same required by Laws of 1914, chapter 211. At any rate there is nothing in the pleadings to show the defendant had any intention or desire to do the improvement himself.

The original resolution setting out the intention to pave was duly published and no protest was filed. Defendant being in court was required to keep up with the proceedings without further notice. See *Edwards House Co.* v. *Jackson,* 91 Miss. 429, 45 So. 14; *Sparks* v. *City of Jackson,* 118 Miss. 502, 79 So. 67. The defendants not having appealed are finally precluded. See *Union Savings Bank & Trust Co.* v. *City of Jackson,* 84 So. 388, 122 Miss. 557; *City of Jackson* v. *Buckley,* 123 Miss. 76.

It is alleged that neither the amended bill nor the exhibits allege sufficient facts to stop the said defendant from setting up the invalidity of the proceedings under which said special improvements were made; but note *Teegarden* v. *Davis,* 36 Ohio St. 601; *Stephenson* v. *Daniels,* 27 id. 544; *Hager* v. *City of Burlington,* 42 Iowa 661, a good case. 23 A. S. R., page 746 is directly in point and cases there cited. See, also, *Burlington* v. *Gilbert,* 31 Iowa 350, 7 Am. Rep. 143, which is directly in point here; 48 Am. Rep. 438, Con. Op. 451 (I invite the court's attention to the opinion in this case and the array of authorities there cited and quoted; section 11, Acts of 1912, page 331; *Langstaff* v. *Durant,* 111 Miss. 820; *Edwards*

*House Co.* v. *Jackson*, 91 Miss. 429; *Sparks* v. *Jackson*, 118 Miss. 502, 79 So. 67; *Jackson* v. *Buckley*, 123 Miss. 76.

Appellants contend, regardless of estoppel set up in his amended bill, that the proceedings were regular and sufficient under the authorities cited. The records show a strict compliance with all requirements of chapter 260, Acts of 1912, and all resolutions required to be published were published. We contend that even if there are any irregularities in the original proceedings, the amended bill sets forth sufficient grounds for estoppel, because ''If the party who assails the assessment has induced the officers to enter upon the work, his complaint should meet with no favor from the courts.'' See last paragraph, section 590, page 615, (2 Ed.), Elliott R. & L., and authorities there cited; see also pages 617 and 621; *Wood* v. *Norwood*, 52 Mich. 32; *Burlington* v. *Gilbert*, 31 Iowa 356 at 365, 7 Am. Rep. 143; *City of Lafayette* v. *Fowler*, 34 Ind. 140; *State* v. *Mitchell*, 31 Ohio St. 592; *Warren* v. *Grand Haven*, 30 Mich. 24; *Bryan* v. *Detroit*, 18 Mich. 495, and 50 Mich. 56; *Peoria* v. *Kidder*, 26 Ill. 351; *Sleeper* v. *Bullen*, 6 Kans. 300; *Pease* v. *Whitney*, 8 Mass. 93; *Fergerson* v. *Landrum* (Ky.), 1 Bost. 548; *Ferguson's Appeal*, 96 Pa. St. 140; *Metz* v. *Detroit*, 18 Mich. 495; 15 Ohio St. 64; 25 N. J. Eq. 298; *Webber* v. *San Francisco*, 1 Cal. 455. See also the very strong case upholding our contention: *Stewart* v. *Board* (Kan.), 23 A. S. R. 746; and also 46 Con. 375, 98 Ill. 632, 99 Ind. 117; 104 Ill. 54; section 367, Elliott R. & L. (2 Ed.), citing *People* v. *Miller*, 109 N. Y. 69, 35 N. E. 405.

The conduct of the defendant estops him from contesting this paving charge even though there should be irregularities therein. I submit that this case should be reversed and judgment entered here in favor of appellant, establishing a lien for said improvements on the property of appellee.

*Powell, Harper & Jiggitts,* for appellee.

I.   The method adopted by the mayor and board of aldermen for the payment of the special improvements involved in this case was not the same as that adopted for all streets in the municipality.   Section 5944, Hemingway's Code, being chapter 260, Laws of 1912.   *City of Jackson* v. *Doxey,* 128 Miss. 618.; *Firm Lbr. Co.* v. *City of Hattiesburg,* 132 Miss. 1; and *Firm Lbr. Co.* v. *City of Hattiesburg,* 133 Miss. 808, have firmly established the doctrine that where the city began to make special improvements prior to the passage of the act of 1912, subsequent to that time the city cannot change the method of its assessment, so long as it is acting under the laws of 1912.

In the case at bar the legislature had issued its mandate to the city authorities in 1912 and in 1916 the city of Canton well knowing the provision made by the legislature in 1912, that when a city adopted a method for the payment of special improvements it was irrevocably bound by such act until the legislature should make a change in the laws of the state and in the authority given to the city governing bodies.   And yet in 1916 the city of Canton knowing this fact proceeded to pave West Peace street and to pay for same out of its general fund and the proceeds from its bonds.   Then in 1923 without the legislature's having changed the law or the authority given to the governing bodies, the city of Canton attempted to make the special improvements involved in this case and to require the abutting owners to pay one-third of the cost, which, in our view, was in utter disregard of the act of 1912.

II.   The time by law for the property owner to do the work himself was not given.   The intention ordinance was the only order, ordinance or resolution dealing with plans and specifications that was published.   Chapter 260, Laws of 1912 only required that the intention ordinance be published, as shown by section 6 thereof, and a notice to the property owners that the assessment had been made, as shown by section 20 thereof.

However in 1914 the legislature seems to have felt that it had placed too light a burden on the city authorities in reference to the power that it had given them to fix liens on private property and had placed too great a burden on the property owners when it required the property owners to keep up with the various steps in the special improvement proceedings with only one notice. The laws of 1914 added a provision requiring the city to publish a notice of the fact that it had adopted plans and specifications.

The city of Canton has failed to carry out the law and the proceedings involved in this case are void.

III.   No order, ordinance, or resolution adopting plans and specifications was ever passed or published.

IV.   The facts do not justify the application of the doctrine of estoppel.   If the contention of appellant were adopted—that the property owners are estopped—then we say that if a party so much as files a petition with the board of mayor and aldermen that he is then estopped, no matter what the subsequent events may be and no matter whether or not the city was misled in any way.

V.   The law does not justify the application of the doctrine of estoppel.   This is a proceeding as shown by the bill, amended bill and supplemental bill, to enforce a lien against the property of the appellee.   See 17 R. C. L., page 597, section 3.   None of the petitioners of the appellee, on which the city is relying, mentioned in any way a lien against appellee's property and we can safely say that such petitions certainly did not create a lien against the property of the appellee.

There are authorities holding that the signing of a petition does not estop the signer where the proceedings are void or the governing body fails to acquire jurisdiction.   We cite *Howell* v. *City of Tacoma,* 3 Wash. 711, 28 A. S. R. 83; *Mayor and City of Baltimore* v. *Porter,*

18 Md. 284, 79 Am. Dec. 686; *Watkins v. Griffith,* 27 S. W. 234; *Commerce Trust Co.* v. *Kick,* 223 S. W. 1057, 1061; *City of Aberdeen* v. *Lucas,* 79 Pac. (Wash.) 632.

There is also a line of authorities holding that by signing a petition, the petitioners assume that the governing body will follow the law and that they are not estopped from showing that the governing body did not follow the law. The leading case on this subject is *Steckert* v. *City of East Saginaw,* 22 Mich. 104, opinion by Judge COOLEY. See, also, *City of Dallas v. Ellison,* 30 S. W. (Tex.) 1128 at 1135; *McLaurin* v. *City of Grand Forks,* 43 N. W. (Dakota) 710; *Meyer* v. *Board of Imp. Paving Dist. No. 4,* 231 S. W. (Ark.) 12 at 13; *Wittenan* v. *Farmers, etc., Trust Co.,* 226 S. W. (Mo.) 941 at 943; *City of Dallas* v. *Atkins,* 32 S. W. (Tex.) 780; *Watkins* v. *Griffith,* 27 S. W. (Ark.) 238-39; *Ardrey* v. *City of Dallas,* 35 S. W. (Tex.) 731; *Galveston H. & S. A. R. R. Co.* v. *Green,* 35 S. W. (Tex.) 819; Hamilton on Law of Special Assessments, page 282.

*Ray & Spivey* and *A. K. Foot,* also, for appellee.

Counsel for the city argues that the city by the 1916 paving did not adopt a system of payment and that a system was not adopted until 1923. Counsel studiously avoids the word used by the legislature in section 4, Laws of 1912, which is "method." We cannot escape from the conclusion that the chancellor, under the agreement on which this case was tried, was eminently correct in sustaining the demurrer on the first ground alone.

The proceedings are fatally defective, first, in that the said ordinance of September 6 was not published as required by the Laws of 1914; and, second, no plans and specifications were adopted as required by the Laws of 1914, whereby the property owners could make the improvements themselves.

The purpose of the legislature in enacting chapter 211, Laws of 1914, was simply to provide for a notice to the

property owners that the street improvements had been ordered, full plans and specifications adopted, and to give the property owners opportunity to make such improvements according to the plans and specifications.

For a brief history of the legislation on street improvements in Mississippi, see sections 3011-12, Code of 1892, sections 3411-14, Code of 1906. Chapter 260, Acts of 1912, was amendatory of sections 3411-14, but the act of 1912 failed to provide for notice to the property owners to make the improvements after the board had acquired the jurisdiction and authority to order same to be done, so, therefore, under the act of 1912 we had this situation, that only one ordinance was required to be published, and that the "intention ordinance." To remedy this situation, chapter 211, Laws of 1914, was enacted.

The publication of the ordinance of September 6, 1923, was jurisdictional and a condition precedent to the city's right to make the improvements. This has been expressly held in *City of Jackson* v. *Williams,* 92 Miss. 301, 46 So. 551, decided under section 3012, Code of 1892. This case has been cited with approval by our supreme court in *City of Jackson* v. *Tucker,* 136 Miss. 787, 101 So. 708; *Stingily* v. *City of Jackson, Central Oil Co.* v. *Jackson,* 104 So. 472, dissenting opinion of ETHRIDGE, J.

To summarize: Under our decisions, the city, to obtain jurisdiction and authority to make the improvements in question, the cost of which would operate as a lien on the abutting property, must show by its records the following jurisdictional facts:

(1) The enactment of the "intention ordinance," which in the case at bar is the ordinance of June 5, 1923, (2) due publication of this notice; (3) that after the lapse of ten days from the publication of the "intention ordinance," there was no sufficient protest; (4) that all the above be shown in the second ordinance, which second ordinance must adopt full plans and specifications for the proposed improvements and provide that the property owners shall make the improvements within

thirty days from its date, or the city will proceed to make the improvements itself; (5) this second ordinance must be published as required by chapter 211, Laws of 1914.

It is a part of the record of this cause that this second ordinance was never published and, therefore, the property owners did not have the opportunity to make the improvements themselves. There is just as much necessity, under the act of 1914, that the second ordinance adopting the plans and specifications and notifying the property owners to make the improvements should be published as there is a necessity of publishing the intention ordinance. Both are of equal dignity and force. *City of Jackson* v. *Tucker,* 101 So. 709 (Miss.).

We will now consider more particularly the third ground of demurrer. Chapter 211, Laws of 1914, presupposes that the plans and specifications for the special improvements shall not be adopted by the board until the board acquires jurisdiction and authority to cause the improvements to be made, for after the passage and publication of the "intention ordinance" a majority of the property owners, under section —, Act of 1912, might exercise their veto power, or the protest might be so vehement as to cause the board to abondon the proposed improvements. Both the cases *City of Jackson* v. *Williams,* 46 So. 551, 92 Miss. 301; and *City of Jackson* v. *Tucker,* 101 So. 709 (Miss.), are cases in which the description, in the ordinance, of the character of the improvements which the property owners were required to make, was the intention.

The ordinance of September 6, 1923, was not published. Therefore, it could not have been either actual or constructive notice to the property owners. Counsel for appellant, in his extremity, endeavors to have an excerpt from a petition by appellee and others supply the requirement that the property owner must be notified of the character of work required by him.

Manifestly, the reference in this petition to a pavement "on the order of" a pavement not then down, al-

though contracted cannot meet the requirements as to notice as laid down in *City of Jackson* v. *Williams, supra; City of Jackson* v. *Tucker, supra.*

*Appellant's amended bill.* The gist of this amended bill was that the appellee was estopped to deny the validity of the proceedings on account of certain petitions addressed to the board of mayor and aldermen by appellee and others in reference to the covering of a certain ditch in front of their properties.

The foregoing orders show conclusively that the city did not agree to cover the ditch, but it most positively refused and ordered that the street improvements be proceeded with, ignoring the request of the petitioners that the ditch be covered. We admit that the ditch was covered later, but we deny that it was covered at the instance of any request by appellee and other petitioners. The fact is that the ditch was covered only to obviate certain engineering difficulties, that it was found impossible to construct the paving without the ditch being covered with concrete as the curbs and gutters would have no support and would be continually menaced by washing and erosion.

Having disposed of the question of estoppel in fact, we will now ask, *Can estoppel supply jurisdictional facts?* Manifestly, a municipality proceeding under chapter 260, Laws of 1912, in our chancery court, seeks the enforcement of a lien. It must be borne in mind that the proceedings are for the enforcement of a lien already created and not the establishing of a lien. This distinction should be clearly borne in mind.

The proceedings are *in rem* to enforce a lien already created. See the opinion of Judge ANDERSON in *City of Jackson* v. *Tucker,* 101 So. 709. The lien is created only by a strict pursuance by the city of the mandatory requirements of the statute. Our chancery court has jurisdiction only to enforce a lien already created, but it has no power to create the lien. The lien can be created only by a strict observance by the city of certain man-

datory requirements of the statute. These mandatory requirements are referred to as jurisdictional. *Ardrey* v. *City of Dallas,* 13 Texas Civil Appeals 442, 35 S. W. 731.

A lien is created in only two ways: first, by contract; second, by statute. The chancellor in rendering the opinion in this case very correctly held that none of the petitions arose to the dignity of a contract; and, further, that if there were any contractual relations between appellant and appellee, the circuit court was the proper forum for an action on the contract.

Our courts have long recognized the distinction between the non-observance by the city of certain conditions precedent which are jurisdictional, and mere irregularities and informalities which would not invalidate the proceedings. *Watkins* v. *Griffith,* 59 Ark. 344, 27 S. W. 239.; 28 Cyc. 1172-73. *Edwards House Co.* v. *City of Jackson,* 91 Miss. 429, 45 So. 14, is distinguished by Judge MAYES in his opinion in *City of Jackson,* v. *Williams,* 92 Miss. 316, 46 So. 551, Judge MAYES showing that in the Edwards House case a subsequent ordinance, immediately following the first, described in detail the character of the special improvements and that this met the requirements of the statute.

The chancellor was eminently correct in sustaining the demurrers of appellee to both the original and the amended bills.

Argued orally by *H. B. Greaves,* for appellant, and *L. G. Spicey & A. Y. Harper,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The city of Canton filed a bill against the appellee, J. R. Davis, to enforce the payment of a charge made against certain property owned by Davis on South Liberty street in the city of Canton, for paving said street under chapter 260 of the Laws of 1912. This bill pro-

ceeded upon the idea that the city acted under the authority of that chapter, and a demurrer was sustained to the bill so filed. Thereafter an amended bill was filed, in which it was alleged that J. R. Davis and others petitioned the city to construct said pavement upon certain conditions set forth in the petition, and that Davis, then being the owner of the property involved in this suit, and others, on the 15th day of May, 1923, filed their separate petition to the mayor and board of aldermen to have constructed on said street a practically permanent pavement on the order of the pavement which would be constructed around the court square, and for which pavement contract had been let, and represented in said petition their willingness to pay for same, as will fully. appear by reference to a copy of said petition filed with the amended bill; that said paving was done at the special instance and request of the said defendant in this suit, and that complainant now charges that the said defendant is estopped from claiming any irregularity as to notice or otherwise in said proceeding; and for these and other reasons set up in complainant's original and amended bill the defendant must pay for said paving; that, among other things, defendant J. R. Davis and others specially provided, in signing said petition, as part of the consideration for signing the said petition, that the city of Canton would cover the ditch in front of defendant's property, which ditch was unsightly, full of grass, weeds, and water, and had been an eyesore to the property owners on South Liberty street, from Semmes street to Hill street, with concrete, so that same could be covered with dirt and grass grown on the top thereof; that, at its own expense, it had such ditch covered at a great expense, namely four thousand seven hundred and twelve dollars, and thereafter laid said pavement as requested.

It is further alleged that the covering of said ditch greatly enhanced the value of said property of the said defendant, transforming the said street from an un-

sightly street into one of the most beautiful boulevards in the city, or in the state of Mississippi, and that it would be highly inequitable and unjust to let the defendant escape the obligation imposed upon him, as said paving was undertaken at the special instance and request of said defendant, together with other abutting property owners on said South Liberty street. It is further alleged and pleaded that decree be entered against defendant to estop him from denying complainant's right to subject said property to the payment of the assessment for paving against it.

There was also an agreed statement of facts supplementing the pleading, in which the orders and proceedings before the board as to notice and other things published by the municipality were to be made a part thereof. The petition referred to, filed by Davis and others, reads as follows:

"The undersigned property owners on South Liberty street hereby petition you to have constructed on said street a practically permanent pavement, on the order of the pavement which will be constructed around the courthouse square, and for which pavement contract has been let. If you will construct a similar pavement on said street in front of our respective lots, and the costs of same will not exceed, each property owner, two dollars and seventy-five cents per running foot, and if you will give us from one to ten years to pay for said pavement that may be constructed in front of and abutting our respective lots, and charge us only six per cent. interest per annum of the moneys that may be assessed against us for said pavement, then, under said conditions, we desire said pavement constructed in front of and abutting our respective properties on said street, and do hereby request that you have the same constructed as soon as possible: Provided further, and the main condition, that the city cover the drain or ditch in front of the properties owned by J. R. Davis, Mrs. Julia Mayfield,

Mrs. D. O. Leitch, and Mrs. Gus Luckett, at the city's expense.''

This petition, dated February 14, 1923, and filed May 5, 1923, was spread upon the minutes of the board. The following order was thereupon entered by the board on its minutes:

"A petition by Mr. J. R. Davis and one by Mr. E. A. Howell were presented to the board by the citizens on South Liberty street, asking that the street pavement be extended on south from the Stewart and Coleman properties to Semmes street; one of the petitioners asking that the big ditch in front of Davis place south to Semmes street be concreted and the same covered with concrete, the city paying for this part of said work. After some discussion, and it being estimated said ditch being concreted would cost nearly fifteen thousand dollars ·or twenty-thousand dollars, the city engineer was asked to figure the estimate cost of this work, and the city attorney was instructed to draw up a resolution extending the contemplated street paving from the Coleman property on the north to Semmes street south, and, said properties being north of big ditch, Mr. Davis was told that, if his petitioners wanted the paving in case the cost of covering the ditch was prohibitive, to bring another petition before the board so stating—they want said street paving leaving the ditch as it is.''

On June 5, 1923, the board entered the following order:

"Motion. Comfort, made and carried that it is the consensus of opinion of board that ditch on South Liberty street be covered as soon as funds are available.''

On the 5th day of September, a motion was made that no new work be done until the ditch on South Liberty street was covered, which motion was lost. On the 13th day of September the following order was entered upon the minutes of the board:

"Mayor called the meeting to order; all the aldermen, attorney, and clerk present. A committee of citizens from South Liberty street were present and tried to get

the board to rescind the street paving order and to cover the big ditch on east side of Liberty street, from Semmes street to Hill street, by putting in concrete boxing. After some talk on the subject, the city attorney explained to the citizens that the city would have to pass new paving resolutions and have them published according to law, and that at the present time the city has not the money to fix the ditch, as this expense is to be borne by the city alone. It was decided to go ahead with the paving.

"Motion of Ross to pave Liberty street to Semmes street and fix ditch, instead of paving the other part of street, lost for want of a second."

On September 18, 1923, a petition of protest was filed by Davis and others asking that the city not pave that part of said street, unless the big ditch on the east side in front of the property of Davis, Mayfield, Leitch, Luckett, and others be concreted as requested, and stating that they would not pay for the street paving unless the ditch was fixed at the city's expense. The matter was discussed by the board, and the clerk was instructed to enter the petition upon its minutes, the disposition of which would be decided at the time of letting the contract to pave said street. The petition was so spread upon the minutes.

On the same day an order was entered as follows:

"In regard to passage of the foregoing resolution to pave Liberty street, the board discussed the petition of citizens living below Semmes street, asking that street not be paved, and after considerable argument was the general opinion of board, backed by that of the city attorney, that said petitioners had waited too long, and part of street could not be legally paved and part left off, after same had been advertised as a whole. Attorney H. T. Huber, representing the petitioners, was present and heard the decision of board to adhere to the original program and let this work as advertised."

On the 14th day of October, 1925, an order was entered levying a special assessment against Davis and the several property owners, the amount assessed against the

property of Davis being eight hundred sixty-two dollars and fifty-three cents. The contract was let for less than the amount stipulated in the petition, but the order making the assessment against the property owners did not conform to the petition of Davis and others, in that an option and right to have from one to ten years to pay for the said pavement, at a charge not exceeding six per cent. interest per annum, was not allowed. The order entered, not being so drawn as to divide the assessment into ten payments, or to fix the interest charged on deferred payments at six per cent., did not follow the petition filed by Davis and others, as prayed for. It further appears that the city of Canton, in 1916, paved Peace street of said city from the proceeds of a bond issue voted for that purpose, without levying any assessment against the property owners for a part of the cost as a special improvement to their property.

Chapter 260, Laws of 1912, has been construed in *City of Jackson* v. *Doxey,* 128 Miss. 618, 91 So. 348, *Firm Lumber Co.* v. *City of Hattiesburg,* 132 Miss. 1, 95 So. 250, and *Firm Lumber Co.* v. *Hattiesburg,* 133 Miss. 808, 98 So. 145. In these cases it was held that, where the city had begun paving under one plan of assessment and paving, it could not thereafter change to a different plan, and that the property owners in those cases who had not petitioned for the improvements could not be charged with them on a different basis from that of the original paving done in the first instance by the city. In the Hattiesburg cases, mentioned above, the city started its paving and paid all the costs thereof, charging none of it against the abutting property owners. Certain streets had been paved in this way previously, but a number of years had intervened, and no further paving had been done until the paving involved in the said suits was begun. The city decided thereafter to pave other streets, and charged the property owners with a portion of the cost thereof as special improvements. The court held that this could not be done under the act of 1912. In the

*Doxey case, supra,* the city had begun paving by charging the property owners a fixed proportion of the cost, and by paying a fixed proportion of the cost itself. Thereafter it undertook to pave another street, and taxed the property owners with the entire cost, and the court held that same could not be done.

The appellant contends that in the present case the city had not begun a system of paving streets, but had only begun the paving of a portion of one of the leading thoroughfares of the city in 1916, and had done no other paving until 1923, and that the paving of Peace street from the court square to the distance shown in the record was not a system of paving, but was an isolated case of paving, and that the rule of the case above referred to ought not to be applied in this case. We are unable to agree with the contention of the appellant in that regard. We think the pavement in 1916 was a beginning of the pavement, and that, under the rule announced in the case above referred to, the plan or system of paving then begun must continue until the legislature amends the law.

It is next argued that the appellant is estopped by reason of the petition which was filed, requesting the board to lay the pavement, with the understanding that the property owners would pay the cost thereof so long as it did not exceed two dollars and seventy-five cents per lineal foot to each petitioner, and that, as the city had acted upon the petition, and incurred the expense of covering the ditch with concrete and laying the pavement at the instance of the petitioners, who derived the benefit from such improvements, they could not thereafter set up irregularities, or the want of power of the city to lay the paving on adverse proceedings. Conceding that the principle contended for is sound, we cannot apply it to the case before us, because the board did not follow the conditions set out in the petition in making the assessment. The city, of course, had jurisdiction of its streets and the power to improve them at its own expense. It can authorize the paving, or refuse to do so. If the city,

after beginning the paving, departed from the scheme of the statute, it would certainly have to travel upon the theory of contract, and to travel upon this theory would require a meeting of the minds of the parties and conformity by the city with the conditions named in the petition. This it did not do in the case before us, and consequently the principle contended for cannot be .applied to this case.

It follows that the judgment of the court below must be affirmed.

*Affirmed.*